at all, at all. And Mr. Taylor. If you please, the Court, I'd like to reserve 10 minutes of total time. That request will be granted. Thank you, Your Honor. Your Honors, we have before the Court today an appeal from six motions to dismiss. From the District of New Jersey. And in none of the motions did any party challenge the essential merits of the claims. Which is that the insurance company defendants used software which adjusted medical PIP or MedPay claims on auto insurance to basically arbitrarily reduce the amount of payments that would be due to doctors or insureds rather than paying their obligation under the policies to pay reasonable medical expenses incurred by the insureds. The District Court made a number of errors which are outlined more fully in our papers. To start off with, the District Courts on a motion to dismiss struck all the class allegations from the complaints using what appeared to be a Rule 23 motion to certify the class standard. Mr. Taylor. Yes. Mr. Taylor, if I can take you back for just a minute. Sure. Your entire case, all six cases, are premised on the notion that there is a breach of contract, correct? Correct. What was the breach of contract? The breach of contract is failure to pay reasonable medical expenses. Then how can the use of software be a breach of contract? It can be a breach of contract under these particular facts because the software in question does not make any determinations as to the reasonableness of the charges which were submitted. If the software resulted in your clients getting paid more than the charges, would you have a breach of contract? No, but that's not how the software works because the software, not every single, did every single claim take a haircut? No. Some claims don't take a haircut. Some claims don't take a haircut. So the breach of contract occurred because you weren't paid what you thought you should be paid, correct? Correct. So if we determine as a matter of law that the use of software does not constitute a breach, cannot, as a matter of law, constitute a breach of contract with the contracts that you have appended to your complaints, you have no case, correct? That's correct, but that issue is not in front of Your Honor. But we can affirm the lower court for any reason, correct? Appearing in the record, correct? That's correct, but no. So if we determine, based on the contracts that are before us, based on the contracts that were appended to your amended complaints, that as a matter of law there was no breach of contract, we can affirm the court for that reason, can we not? That issue is not before the court, Your Honor. I see, okay. No party, not even the district court, found or argued that the use of this software in the manner that the defendants have used it is not a breach of contract. You know, the only standard in the contract is reasonableness, correct? Correct. I mean, it doesn't say you have to consider A, B, and C, and for that matter it doesn't say you can't use a computer, right? Correct. And we're not saying that you can't make a reasonableness determination. We're not saying that you can't use a computer to make a reasonableness determination. What we are saying is that the computer software that they used and the procedure that they used was not a reasonableness determination because the information and how they use it does not make a determination of whether the charges were reasonable or not. What they, how they use it is they set an arbitrary ceiling and any bill that's above that arbitrary ceiling, reasonable or not, is not paid. They shave that much off of the bill. But some of the, as Judge Diamond asked, some of the claims were paid up to that arbitrary ceiling, which may have been higher than what the reasonable amount may have been under, without the software. Your Honor, the, how the software works is that they don't pay up to whatever the cap is. If it's under the cap, they pay whatever the bill is. I understand that. If it's over the cap, then they cut it off at the cap. Right. So you're not going to be The question here is where's the cap, who establishes the cap? The insurance companies. I know that. The insurance companies, they program into the computer the 80th percentile, 85th percentile. It's an arbitrary cutoff. Anything above doesn't get paid. But anybody that comes in below whatever they've established as their cutoff doesn't get bumped up to the cutoff. Okay. So it's a matter of, you know, that's a ceiling, not what they pay every claim. Mr. Taylor, here's where I think the district court, obviously, in its six opinions, made various findings and determinations. But here's what bothers me with this case, as immense as it is. An interesting question, notwithstanding. You have six different cases. Yes. With six different groups of named plaintiffs trying to establish and trying to get class certification in the District Court of New Jersey. Yes. For claims by these various providers to six, call them six insurance companies, six plus subsidiaries, whatever. Yes. Which span, in some of the complaints, as many as 50 states. Yes. Correct? How can any one court, any one federal court, ever find that the class claims predominate over the individual issues of law? With all of the various and sundry issues of law, I mean, I don't know how many different no-fault insurance models there are in this country. Maybe there aren't 50, but there's got to be a multitude of different statutes. I know some were copied in the 80s when legislatures adopted no-faults, and there might be some similarity, but there are still differences. I mean, how can there ever be predominance in a federal class action of this immensity? The answer to that question, Your Honor, is it's very easy because we're not making claims based upon the PIP or the MedPay statutes. It's not a claim for the recovery of statutory benefits. We're suing under the insurance policies themselves, which are standardized language. They're substantially similar to each other, and the law applicable to those policies is ordinary contract law, which does not vary from state to state. I understand your answer, and I think you clearly understand my question. But isn't each of those policies governed by a specific no-fault insurance law that contains the specific standards that the insurers have to follow in issuing a policy? There may be differences, but not with respect to the particular issue and the particular coverage, which is an issue in all of these cases. I mean, there may be issues about how you treat them, what has to be covered, what's not covered, that sort of issue. But what our claims, our classes do not get into any issues of whether particular claims or individual claims are covered under this policy or that policy, this exclusion, that exclusion, because those are excluded from the class. We're only dealing with claims where the insurance company acknowledged the claim, acknowledged an obligation to pay the claim because they issued a check to the medical provider. But on a lot of the claims, they cut off part of the bill based upon an arbitrary cutoff, rather than making a reasonable determination. You sent to us a motion to supplement your authority just last week in the other side's Senate response, and you referenced the Oregon case. How many similar state-class actions are there pending involving these same allegations, if you know? I don't know. I know that there's one in Oregon. I think there's one in Washington. I think there might be – I know of one or two others, but beyond that, I couldn't say one way or another. It doesn't appear in the record anyway? Correct. That's not something that appeared in the record. And the reason that we referenced the claims in the other cases was to demonstrate to the district court that, yes, it is possible to overcome the requirements of the class action, and you can certify class actions based upon these claims. And I think what I wanted to speak about, Your Honor, sort of ties into your questions, which is the standard that you would use for striking the class allegations. It's a 12B6 standard based upon you have to accept the truthfulness of the allegations in the complaint, give the benefit of all of the doubt to the plaintiff. And that's not what the district court did. The district court basically went on a standard of if it was a motion to certify. And in fact, one of the reasons that the court didn't certify the class or struck the class allegations was we did not present a trial plan to discuss the manageability of the case when we hadn't even had discovery to figure out what the evidence is going to be, what witnesses are going to be put on, and to be able to tell the district court how you could manage the case. And you can't do that on the pleadings without having discovery and knowing how you're going to prove your case. I hate to digress, but since you're talking about 12B6, if we agree that the class is not properly certified, you had said in your brief, I believe, that you believe that the court should just stay the case pending arbitrations, I guess. But how would we have diversity jurisdiction? Do the individual cases then make the minimum amount dollar-wise? Yes, they do, Your Honor. I know you want to aggregate. If we say that it's not really a class, aren't you talking about $1.50 a throw in some cases? That doesn't make the $75,000 mark, obviously. Well, if you get back, that gets to the issue. If the claim, if you say on the face of the pleadings that a class should never be certified, the only state or class, subclass set of plaintiffs, however you want to look at it, where arbitration was an issue is for the Minnesota plaintiffs. And that works, and there's mandatory arbitration for Minnesota claims, which are under $10,000. I'm talking about our jurisdiction. Correct. If we don't, I mean, it seems to me it's diversity, the basis of jurisdiction here is diversity. Yes. If these are a bunch of, if we find it's a bunch of disparate cases, then is there jurisdiction at all? Over the individual plaintiff claims? Yeah. I mean, I don't think anybody could stay the case then, could they? Never. Not in federal court. Because the individual plaintiffs have been cheated out of, you know, $10, $20, $30, $100. Well, that's right, right. But then, which is, you know, this is what your quintessential class issue is. I know that's not the way you want to go, but I just want to. But the point is, based upon the pleadings, can the court say that no class could ever be certified based upon the allegations that are in the complaint? I don't think that the court can really do that because there are sufficient facts pleaded in the complaint where it is possible to certify a class. Well, that's not quite what Judge Pisano said. As I read what Judge Pisano said was that it's not a B-2 case because you're primarily seeking damages and you don't dispute that. Correct. And he said that it would, going back to Judge Fisher's point, it would be unmanageable. You've got 20 states at least with these PIP statutes, and you want a class of plaintiffs from 50 states. And the principles of law involved would be nightmarish and simply couldn't be managed. And he can determine what discovery would you seek that would make that question easier to resolve. Your Honor, there are a number of different things where you have to have predominance of class issues. The Brooks v. Educators Mutual Life case, which was certified in the Eastern District of Pennsylvania, and the whole issue was on the reasonableness of charges from individual plaintiffs. They certified that class because the individual- But that's not the question I asked you. You said we weren't given the chance to take discovery. Indeed, you hadn't even moved to certify a class. Correct. The trial court simply said, I can tell from this complaint there's no point going forward. You can't possibly show predominance. What discovery would you take? Why did the case have to go on to clarify the predominance question? What is it that you hope to learn with two years of discovery or whatever it is that- and with a nationwide class, I think a year or two years of discovery is probably a reasonable guess. What is it you hope to learn that would make the predominance question clearer? Insofar as the predominance of questions of law- Yeah. First of all, are, as we believe, all of the insurance policies substantially similar and have substantially similar language- Didn't you plead that? Yes, we did. And the judge accepted that as true. Did he not? No, he did not. If we accept it as true, since we have to, it's a well-pleaded complaint, how does that solve Judge Fisher's problem? You still have 50 states. You still have 50 state laws. And we don't know how many laws from the 50 states, statutory and common law. PIP laws, laws regarding fraud, laws regarding offer acceptance, laws regarding performance. Possibly the Uniform Commercial Code. And you've got one judge in New Jersey handling all of that? What is it you hope to find out in discovery that is going to make anything any clearer with respect to predominance of legal issues? With respect to the predominance of legal issues, what we have pleaded, what our claim is, is that it is a uniform breach of contract case. What we're talking about is not doing what the contract says. There may be any number of variations in PIP statutes, PIP requirements, but not as far as the contract is concerned. So your answer is there's no discovery that you're going to take that's going to clarify that. You think you can determine that already. Is that correct? That's what's pleaded in our complaint. But you think you can determine without any, you can say right now, you don't need any discovery to show legal predominance. That's what you're telling me. Is that what I'm hearing? If the court wants to go through and go state by state to determine whether New Jersey is different from Minnesota, is different from Arkansas, is different from Texas, is different from California, then the discovery that we would need is to get their insurance policies from each of those states. In so far as predominance of factual issues, we would need discovery as to how do they process these claims? What's their procedure? How do they handle them? Is it a uniform standard, which is what's pleaded in the complaint? In the end, if we're going to go to factual predominance, which seems to be where you want to go, in the end, doesn't the court have to determine individually, contract by contract by contract, claim by claim by claim, what is or isn't a reasonable charge? No. Not as to liability. Isn't that your breach of contract, that they didn't live up to their obligation under the contract to give you a reasonable reimbursement? No. That's not your allegation? That is the allegation, but not as Your Honor has stated it. What the allegation is, is that using this computer software, which does not make a reasonableness determination to chop claims off, is not paying reasonable medical expenses by definition. None of the defendants have challenged that cause of action. The district court did not challenge that cause of action, and that issue is not before the court. How do you get by just taking this down to a more simple issue? How do you get by the Minnesota problem with arbitration? Insofar as the Minnesota plaintiffs are concerned? Right. As we've explained at length in our briefs, we believe that the amount in controversy is over the $10,000 because we believe it a class action, and the amount in controversy is the $5 million amount in controversy so that it goes over the $10,000 limit. Insofar as in the event, which we don't think would be appropriate, but if the Minnesota plaintiffs have to go to arbitration, that would be a single state arbitration dealing with Minnesota plaintiffs' claims under Minnesota law, only in Minnesota. It would be essentially a one state class in arbitration. Did you ask a district court to stay the case pending Minnesota arbitration? We did not. The court dismissed without even issuing a state. Under the Federal Arbitration Act, they're supposed to compel arbitration and issue a state rather than dismissing, which is not what the district court did. Okay. All right. Mr. Taylor, you have 10 minutes that you've reserved for rebuttal, and we'll hear back from you at that time. All right. Now we'll hear from the defendants, I guess, so keep some order here. Can I call you in the order you're listed? If I may, Your Honor. I'll explain it to you. Mr. Cohn. May it please the Court, Jacob Cohn from Cozen O'Connor for the federal Chubb defendants. We've tried to split this up in an orderly fashion. I plan to address issues related to the Chubb entities and to the Minnesota plaintiffs. Mr. Levy, for all stated met life, will focus on class dismissal issues and standing. Mr. Dilloff intends to spend five minutes regarding traveler-specific defenses. Mr. Hochman has asked for just three minutes to discuss the subject of the assignability of claims. And Mr. Yohei will take the final two minutes to talk about the plaintiff's failure to sue the correct farmer's entities. All right. That sounds like some orderly progression, so why don't you continue? Okay, Your Honor. From Chubb's perspective, I'd like to talk about grounds for affirmance. First, just in passing, I would note that as an alternative grounds for affirmance, the Chubb entity that issued the policy was not sued, so they've raised no reasons for why they should be suing a different Chubb entity. So that's out there, but I didn't want to focus the argument on it. Are the issues the same as in AIG and in farmers? Yes, they are, Your Honor, largely. The second issue is that SLPC, St. Louis Park Chiropractic, and the other Minnesota claimants have to arbitrate under their contracts and under Minnesota law. And a party that has to arbitrate can't be a class representative. They are not an adequate class representative because they have to go to arbitration. Yeah, but the judge could easily have allowed the plaintiff to substitute another class representative, couldn't he? That was not a request that was made, and the answer would be no, certainly not with respect to Minnesota plaintiffs. Mr. Cone, Mr. Cone, this judge refused to certify a class before the plaintiff asked for the class to be certified. How on earth could they ask for a... He simply said, I'm not going to certify before there was any class discovery taken and before there was a motion to certify. Have you ever known that? How long have you been practicing law? 22 years, Your Honor. Have you ever seen a court do that before? I've never seen a class representative that's looking, a lawyer who's looking for another class representative not ask for leave to substitute one in. But the answer, I'm trying to deal with the Minnesota plaintiffs. You cannot have as a definitional matter a plaintiff from Minnesota or from New Jersey or from any other number of states where when you have a disagreement with an insurance company over reimbursement, you must proceed to mandatory arbitration. That really is a showstopper with respect to the adequacy of the availability of an adequate class representative. Now, if somebody were to have a claim for $10,000 or more that would not be subject to the arbitration and a class existed, which I doubt would exist in a numerosity sense, sure, you could go forward. But with respect to the Minnesota claimants, they can't arbitrate. And my opponent says, well, why don't you stay it instead of dismissing it? That goes right back to Judge Chigares' jurisdictional point, which is if you can't be a class representative, you can't agglomerate for 1332D2 purposes $5 million of somebody else's claims, and you certainly can't under Minnesota law. That's clear from the Illinois Farmers' decision. And that's sort of the end of your argument from that perspective. And the third ground that I will... Can't you agglomerate all of the various claims you have from separate people that are owed to you as the provider? Certainly not under Illinois Farmers as a matter of Illinois law to get to your $10,000 to get around the arbitration provision. So if you can't do that as a matter of Minnesota law, then you can't get out of arbitration, therefore there's no cause to attempt... Your answer is as to Minnesota plaintiffs? Yes. Okay. That's what you're addressing. And that is where my argument is rather limited. Not to step on Mr. Levy's toes with respect to the class issue, I would suggest to your honors, I think the law in the Third Circuit is that class certification, and I'll quote from the Johnson v. HBO film management case, is inappropriate in cases that present individualized issues of liability. And here, whether or not you agree that a particular charge... Has this court ever held or described what the standard is to strike class allegations before there's even a motion to certify? I think it's a 12B6 standard. I don't know if... Mr. Cohn. Sure. Has this court ever articulated a standard? I don't think it has. I don't believe so. This is an issue of first impression. I believe so. And the judge determined, and indeed the judge said several points in his orders and his footnotes, he didn't say I struck the class allegations, he said I refused to certify the class. Didn't he? I think that... Was it a slip of the pen? I don't know about a slip of the pen, but I don't think that the ultimate analysis is different. I think that the analysis is going to be a 12B6 analysis, and if you look at the face of the complaint and you conclude under no set of circumstances is a certifiable class alleged, whether you call it striking the class allegations or dismissing or sua sponte or on the face of it denying class certification, as long as you're applying the appropriate standard, which I do think in fairness is the 12B6 standard, then you have done the appropriate thing and you certainly can affirm. And I think in this case, and I think it has been the subject of the discussion in the opening argument here, unless you can say, and I don't think you can say, that the fact that $1.51 was lopped off a $120 bill is standing alone a breach of contract that establishes liability against an insurer who does that, that you have predominance. Because the fact of the matter is if Chubb was wrong to reduce something $1.50, that's something that needs to be proved on a case-by-case basis. If they have a program, and the reality is all insurers and many other people with vast numbers of claims need a way to quickly determine things, if the $1.50 is disputed, there is a dispute resolution mechanism, and at that point the burden is always upon the plaintiff to establish reasonableness. And it can be contested. And if they go into there, into the arbitration and say, no, this computer formula is not reliable, maybe the arbitrator doesn't admit it, but the arbitrator does not say, you lose, then the insurance company has to go prove its reasonableness or unreasonableness calculation by another means. And I think the predominance issue can and should be determined as a matter of Third Circuit law, and I think if you look to the Johnson v. HBO case, which was Judge Greenberg, cited the Life USA Holdings case, going back to Georgine and Barnes, and basically said, if you have a case where your common question, while perhaps interesting, doesn't establish liability against the defendant, predominance is lacking as a matter of law. Did the case of Ashcroft v. Iqbal change anything for us in looking at the propriety of a dismissal on a 12b6? No, that's not the Oregon case. That's the case decided two weeks ago by the United States Supreme Court that seems to keep, move the ball a little bit further. I'm sorry. Maybe one of your colleagues, I'm not prepared. Mr. Dilloff, you'd be able to comment on that, be curious as it applies to this case. If your honors have no further questions. Well, actually, are you able to, your adversary is going to great pains to tell us that, in responding to our concern about the disparate 50 state laws all over the place, he points out that this is just really kind of a, just a plain old breach of contract case, not any different state to state. How do you respond to that? Well, let's take New Jersey then, because the law in New Jersey is that the insurance companies have an affirmative obligation to question charges that are submitted by healthcare providers. They have an affirmative independent obligation to the public and to their policy holders to rein in costs. And they are not supposed to pay a fee, even if it's within their fee schedule or below the line where they would chop, if that's not in fact the usual customary charge of that particular healthcare provider. So I would welcome the application of New Jersey law to this, but I have no reason to believe that there are not important variances, and I think that Mr. Levy's client's breach sets forth a number of them. Right. Okay, Mr. Kahn. Thank you. Thank you, Mr. Levy. And unless you're stepping on others' toes, don't be afraid to stray into other areas, particularly if questions are asked of you. Yes, Your Honor. Okay. May it please the Court. Your Honors, the relief that Judge Pisano granted with respect to the class allegations is not as unusual as Plaintiff's Counsel is making it out to be. First of all, it's specifically provided for in the Federal Rules of Civil Procedure. Rule 23d1d specifically provides for the disposition of the class allegations at early stages of the proceedings. Secondly, several cases that we cited in our brief did establish the standard for when it's... They were not Third Circuit cases, but they were District Court cases that did establish a standard for when you could dismiss the class allegations. We cited two cases from New Jersey, District Court cases that had dismissed class allegations where there was clearly a lack of predominance based on the face of the complaint, and we submit that Judge Pisano did not do a Rule 23 analysis. If you look at the very beginning of his opinion, which is page 9 of the Metropolitan Opinion and page 14 of the Allstate Opinion, he specifically adverted to the standard that you look at the face of the complaint and the determination is made based on the face of the complaint. He did go through Rule 23. We submit that that was illustrative of the fact that he looked at the face of the complaint and made the determination based on the face of the complaint. He did not apply the Rule 23 standards. We think that the simplest reason why his decision on the class issue should be affirmed is the reasonableness issue. The contractual obligation is, in fact, not to use any particular type or not to use any particular type of methodology to get to reasonableness. In the Traveler's case, Judge Pisano says in footnote 1, because the court has decided to deny class certification in the Allstate matter, and he says this several times, the issue as it pertains to this action is new. He said he was denying certification, didn't he? I think that was an unfortunate slip of the pen. How many times did his pen slip? I think it slipped because I would advert to his language on page 9 of his opinion in the Metropolitan case. I understand he began the discussion citing another district court opinion saying I'm considering whether to strike the allegations based on the face of the complaint, but his analysis was entirely a Rule 23 analysis. Isn't that right? I don't think that's right, Your Honor, because I think that a large part of it was the individualized reasonableness determination that is apparent on the face of the complaint alone. He went through the B-2 requirements, then he went through the B-3 requirements, didn't he? Well, he went through the B-2 requirements because we had made an argument in our brief on B-2 that as a matter of law, it could not be a viable B-2 class action because they were seeking monetary damages, which they've conceded, so I think that was perfectly appropriate. And then he went through the B-3 requirements, didn't he? He did. He did, Your Honor. It was a class certification analysis before the plaintiff had moved to certify. And we submit that he was doing that only to be illustrative as to why they could not satisfy the face of the complaint standard. I don't know why... I mean, it seems to me you're afraid to say he went through a Rule 23 analysis. I don't know what's wrong with that. I think if he's going to strike something right on its face, he has to determine, essentially, that under the governing law, this plaintiff could never meet the requirements. So he has to go through Rule 23. I'm not sure why you're running away from it. Well, he did, and respectfully, I wasn't. I believe he did it to be illustrative, but I believe that he applied the right standard. I believe he applied the face of the complaint standard, but to illustrate, he went through the Rule 23 factors. The two biggest ones are the fact that under the contract, they have to prove reasonableness. That's the only contractual obligation, and there would have to be a case-by-case determination of reasonableness for every bill, and they try to avoid that by saying that basically they've alleged that everything is unreasonable. That's a legal conclusion. That's not a fact. What they alleged is that the system is flawed for determining reasonableness. Even if the system is flawed, Your Honors, that doesn't prove that in any specific instance a reasonable amount was not paid by the insurance company, and the insurance company is not liable unless it fails to pay a reasonable amount, and that decision would have to be made in each and every case, and that would swamp, as a matter of law, any common issue that they could come up with relating to the alleged flaws in the system, and Judge Pisano specifically based his ruling in part on that. The other main part of his ruling was the overwhelming variances in state laws that would have to be applied. They say it's only a breach of contract action, Your Honors, but if you look at the various PIP statutes and PIP laws, those are all incorporated into all the contracts as a matter of law, and therefore, all the varying PIP laws would have to be looked at to determine reasonableness, and so, again, that would be the laws of 50 states on the issue of reasonableness. Now, none of the cases that they cite are anywhere near nationwide class action, certainly not the case that they cited as supplemental authority. That was an Oregon State-only class action. It certainly was not a nationwide class action. I would also like to answer something that Your Honor asked. You asked Mr. Cohen whether he had ever seen a case where the class allegations were stricken. We did cite some in the Allstate brief at pages 42 through 44, where, in fact, courts did strike class allegations in MedPay bill reduction reasonableness cases. One of them I had the privilege to litigate in Maryland, the Antwine v. Allstate case, another one in the District of Maryland called the Ross Randolph v. Allstate case, and another one out of Florida, which I didn't litigate, but called the Lennon v. Safeco case. In those cases, the class allegations were, in fact, stricken for the very reason that there would have to be individualized reasonableness determinations. The one other thing I did want to turn to, Your Honors, before my time runs out, is that there is an independent ground for affirmance of Judge Pisano's decision with respect to the individual dismissals that I just wanted to quickly point out. In order to have standing to bring this action in the first place, the plaintiff providers can only get the standing through the insureds. And the insureds, it's been held in many cases cited in the Allstate brief, for example, the fourth case out of the Supreme Court of Texas, the McGill case out of Michigan, and some other cases, that insureds do not have standing to bring this type of cause of action for a wrongful bill reduction unless they have been actually... they're subject to actual collection activity by their providers or at least threatened with collection activity, or at the very least, if they have arguably incurred the liability because somehow they signed some sort of document saying that they would pay the providers even if the insurers didn't pay. But this report did not address that argument. This report did not. This is simply an independent ground for affirmance. But isn't all that covered in the assignment? Some of you contest the availability of the assignment, but isn't all that... can't all that be construed to be included? We would submit that they can't... that the assignor or the insureds can't assign any rights that they don't have. And if they don't have standing... Well, they have the right to have their provider reimbursed at a reasonable amount. That's the basis of the statute. According to the cases that we cited from these various states, they don't have that right if they haven't been threatened with any collection activity as a result of the bill not being paid by the provider. And there's no... Oh, I'm sorry. Don't they get the assignment from the mere statute? Don't they get the standing via the statute itself? I don't think so, Your Honor. At least that's not what these cases that we cited in our briefs have held. They held that there had to be some sort of actual collection activity. Otherwise, the insureds have no damage. And if the insureds have no damage, they can't assign any greater rights to their providers. So it is our view that that's an independent ground for affirmance. Thank you for your time, Your Honor. Did you raise this before the district court, the argument? Yes. Okay. It just wasn't dealt with in the opinion? Yes. Okay. Thank you, Your Honor. Thank you, Mr. Levy. Mr. Dilloff? Yes, sir. May it please the court, my name is Neil Dilloff. I have a grand total of five minutes, and I went to Georgetown Law School. Ooh, hey, all right. I'd like to move the discussion... What year, huh? 1973. Who's older, you or me? Ooh. Okay. You are. I am, all right. I may have been a class ahead of you, but I'm not sure I'm older. Okay. I'd like to move the discussion from the sublime to the mundane. Our situation is a little bit different from the other defendants, and of course I adopt all the great wisdom of all my predecessors and those who follow. But I'd like to talk a little bit about the traveler situation. First of all, this is a one-count breach of contract claim. We were granted summary judgment because we filed a motion to dismiss or the alternative for summary judgment, and there were documents attached, affidavits and a release, which has never been contested at all by the plaintiff as to validity, and that releases us. And in addition, because it was a summary judgment motion, the plaintiff had to come forward with what they purported to be an assignment, which gives them standing to sue us for breach of contract. And if you take a look at the release, which is at the joint record extract, 1753 and 1754. The insured had signed away his. Absolutely, and it was broad. However, if we determine that the class allegations were improperly stricken, then Travelers is back in the case, is that correct? No, sir. No? No. There were no class allegations against Travelers? There were class allegations against Travelers, but with respect to our single. . . If they can substitute a class representative. Well, that's the catch. Right now we've been sued by a single Minnesota plaintiff. If they're going to go grab somebody else and plug them in, we'll see what happens. But right now, as things stand and the record stands, Judge Dimon, we're in here only for a single Minnesota plaintiff that has released my client, and that release is undisputed. It includes S&Es. It includes claims in the past. It includes claims in the future. It's a release that they've not contested at all. And that release, in addition to the fact that there is no assignment at all here, they were forced to get on summary judgment. I'm in a different procedural posture here. On summary judgment, they were required by the district court in response to our allegations, show me the money, show me the assignment. They attached a form, which is unsigned. And if you look at the form, which is the assignment at Joint Record Extract 1757, it's for some person that had asthma. Well, that's not even our case here. They attached some form, unsigned, and if you look at the language, it's not an assignment at all. What it is merely is a right on the half of the provider to get the carrier to pay a bill. Now, let me take this to its logical conclusion for a second, because the assignment issue has really not been talked about that much. Someone has a car accident, and they go to five different people. They go to a doctor over here, because they've got a bad neck. They go over here to a physical therapist. They have an emergency room bill, et cetera. If you conclude, which you can't as a matter of law, which Judge Bassano agrees with us, that this is an assignment, well, there's now five people that have rights under the contract, or 10 or 20, depending on how many providers you are. That shows the illogic of the argument that this form, which says, I direct you to pay my provider a certain amount of money, is an assignment. And beyond that, the form itself says the individual insured is still liable to the provider for any overage. Now, in this case, no one's ever made a claim back against the insured for anything. So the two bases that Judge Bassano granted our motion for summary judgment on, number one is an uncontested release, and number two is a piece of paper that is unsigned that they call an assignment which isn't. So irrespective of what happens, unless they come up with some new plaintiff, who's not a Minnesota plaintiff, in addition, obviously, they have to arbitrate. I'm not going to rehash that because there's so many reasons here why we get out. Then we're out of this case. And one of the things you do, Judge Diamond, as you know, is if you don't like who you got as a plaintiff, they had plenty of time. This case has gone on since 2007. To get whoever else they wanted to come in as a class representative, bring them in, join them as an additional party plaintiff, they didn't do that. And we should not be prejudiced by sitting around for two years defending a case brought by a Minnesota plaintiff only to have them come back and stand back and say, oops, I got somebody else. And that's why Travelers is out. Unless the Court has any questions, I'm done. Thank you. Thank you. Mr. Hoffman. Good afternoon, Your Honors. Rob Hoffman on behalf of the AIG defendants in Appeal Number 083821. And the AIG dismissal as well also has a separate issue. Excuse me, would you mind putting the microphone closer to your mouth there? I may have turned the volume up. Separate altogether. Is that better? I think I may have turned the volume down. Well, they record these things. I appreciate that. I hope this is okay. So we, too, have a separate issue that's altogether different from what we've been talking about, and it stems from the same fundamental premise as much of what we've been talking about already. This is a breach of contract case, and the only AIG entities that the plaintiffs are pursuing in this court are AIG CS and AIG M, who are not parties to the contract. So they need some doctrine to drag them over to make them liable for what is simply a breach of contract and what they have settled on finally in their reply brief in this court. Your clients have a structure that makes it impossible to sue anybody. If you sue the party, they have no assets. If they sue you, you have no privity. I can assure you, Your Honor, that AIG has no problem being sued. There are plenty of cases pending against AIG. They used to not have any problem being sued. They may have a problem being sued now. But when you sue for breach of contract, you should start by suing the party to the contract, and they did that, but in this case, in this court, at this point, with everybody having dropped out, they're pressing their claims against these non-insurance company defendants. Why shouldn't we grant the plaintiff's leave to amend if you're correct? Because it's perfectly clear that they have nothing else to say, and the futility doctrine, I think, applies here. Basically, what they've said, and if you go down and look at what they claim supports their agency theory, they point to things like common ownership, overlapping corporate officers between the non-insurance company defendants and the insurance company defendants, doing business under a common name, that the companies actually do what they're supposed to do, which is adjust the claims of the insurance companies. These are garden-variety, plain vanilla descriptions of affiliated but separately incorporated entities. And that's the end of the matter. If that is sufficient to state a claim for agency, to state a claim based on an agency theory, then we are looking at a revolution in corporate structure and in corporate law. And there's no reason to do that. They didn't ask the district court. They've never once, either in this court, in their opening brief, their reply brief, or as he stood here today, said they have a single additional fact to mention. And in this regard, Judge Fisher, you asked about Ashcroft v. Iqbal. I think this is exactly a place where that pleading, the way the Supreme Court is indicating that the 12B6 standard should be applied, has bite. It says you've got to be realistic here. And when they're not showing you anything to give you any reason to believe that anything, that they're going to be able to do anything, there's no point in sending it back to Judge Pisano and going through this whole process again and maybe even coming back here again with nary a difference. Happy to answer any further questions. Wasn't your client one of the parties that the court dismissed sua sponte and your adversary took exception to that? What's your reaction to that? I believe some of the insurance company defendants were dismissed sua sponte. They didn't object at some points to some of them. They did object at another point to others. But at this point, on appeal, they say nothing about any party except AIGCS and AIGM, and those are the parties that were out on this agency for failure to plead privity. Okay. Thank you, Your Honors. Thank you, Mr. Hoffman. And we'll hear from Mr. Yochai. Yochai. Your Honor, David Yochai for Farmers Insurance Exchange. Farmers Insurance Exchange, like some of the AIG defendants, was not a party to the policy. As you all are aware by now, on a breach of contract case, we can't be held liable when we're not a party to the insurance policy. More importantly here, plaintiffs initially were pursuing an alter ego theory, but in their reply brief at 45 and 48, plaintiffs concede that they're no longer pursuing an alter ego theory. So that's the end of the alter ego theory. The only other theory that they pursued is an agency theory. But Farmers Insurance Exchange actually owns the stock companies that would have been the right defendants had they sued them. Farmers Insurance Exchange, even if it was an agent, that would make the principals liable, the people they didn't sue. It doesn't make any sense to say, well, it's an agency theory, so the principals should be liable. They didn't sue the principals. It certainly wasn't an undisclosed principals. These were the people on the policies, the companies on the policy. Finally, with respect to the futility point, here Judge Pisano actually did make a finding. He said, at most, plaintiffs can only allege that defendants managed the claims arising under the policies and adjusted mid-pay claims submitted by the claimants. That's at JA-122. He said, at most, they can do this. I believe that is akin to a futility finding, and that Your Honors can affirm on that basis even without leave to amend. And by the way, they never asked for leave to amend. They have nothing to amend. It wouldn't make any sense to amend. There's no alter ego theory. There's no agency theory. There's nothing here. Thank you. Okay, Mr. Yohai, thank you very much. Mr. Taylor, you have ten minutes to answer all that. Thank you, Your Honor. Let me start off on the Minnesota plaintiffs and Minnesota arbitrations. Assuming that the Minnesota plaintiffs have to go to arbitration, one of the reasons that Judge Pisano found that the arbitration allegations should be stricken was the Minnesota plaintiffs were not appropriate class representatives in litigation. That may be true if you don't get to, if you're going to have to arbitrate the claims, but they would be perfect class representatives in arbitration because they are parties who are required to arbitrate their claims. Therefore, they would be appropriate class representatives in a Minnesota-only class arbitration. Dealing with the Ashcroft case, Your Honor, I don't believe that that case really makes any change at all with respect to the issues before the court. The court went through essentially a Twombly analysis, you know, hook, line and sinker, bag and baggage, however you want to look at it. The only new issue that they raised was whether the Twombly standard applies in all cases or in just antitrust cases. They found that it applies to all cases, but this court has already found that in the Phillips v. County of Allegheny case. With respect to standing, it's a very simple issue, Your Honor. The doctors submitted bills to the insurance companies. They didn't get their bills paid in full. Therefore, they were injured and would have standing to sue. The issue of whether the insureds might have standing to sue for what the doctors didn't get paid is a completely separate issue that's not relevant here. With respect to the traveler's complaint... Mr. Taylor, don't the doctors, don't the providers get standing through the assignment of the insured's rights? Sure. And if they didn't have a, if no one was suing them... No one was suing... The insureds for not paying the bills, i.e. your clients... Right. Doesn't that raise a standing question, at least as cited by, in the various cases that... No, Your Honor, it doesn't. ...the opposing counsels brought to our attention? It doesn't, Your Honor, because the cases that they're citing was where the insured was attempting to bring claims similar to these over the fact that the insurer did not pay the doctors enough. And they were found that the insured didn't have standing because they weren't harmed by the doctor getting paid in full after the insured for payment for the rest of their bill. It's a completely different analysis over whether the doctor has standing or not. Because the insured assigned to the doctor the right to be paid for the reasonable medical charges under the policy. The doctor submitted a bill and expected to be paid the reasonable charges. He was not paid the reasonable charges. Therefore, he was injured. I guess what Judge Fischer is asking you is, doesn't the doctor stand in the shoes of the patient? Isn't that what signing over the insurer's rights is all about? Well, at what point in time does the doctor stand in the shoes of the insurer? As of the time of the assignment, absolutely. And as of the time of the assignment, the doctor gets whatever rights the insured has under the policy. Does the insured have the right to have the doctor paid more than he billed? I'm sorry, paid what he's billed, not to get paid less than he's billed? Is that a patient's right?  to pay all reasonable medical expenses. That right is assigned to the doctor when he begins treatment. If the doctor doesn't get paid the reasonable medical expenses, then the doctor has been injured. No member of the class is a patient, am I correct? No member of any of these proposed classes is a patient, or am I wrong about that? The proposed classes do include patients. They do. And these are patients who haven't had their bills fully paid. Correct. Or they were not fully reimbursed themselves. They were not fully reimbursed themselves. Correct. If they were not fully reimbursed themselves, if the check went to the insured and the insured was not paid everything that the insured was supposed to be paid, then the insured would be injured in the same way that the doctor isn't paid. Do all plaintiffs' groups have at least one insured? As presently defined in the complaint, yes. Okay. I think you were talking about travelers. Yes. I think your adversary mentioned about summary judgment and there was the uncontested release and unsigned assignment. Maybe you want to deal with that? Sure. There were a number of summary judgment motions made by a number of the defendants. The only one that the district court actually ruled on was in travelers. All of the plaintiffs submitted declarations explaining the process by which they were assigned their claims. In every case they receive an assignment when they begin treatment. They attach their form assignment as part of their declaration. This is what they use in every case. It's signed by every patient that comes in. As a matter of course with respect to every patient, they submit payment to the insurance company with the form so that the fact that we did not submit an affidavit dealing with a particular assignment for a particular plaintiff defeats summary judgment because what we explain what happens in every case, not in the particular case that they're dealing with. If it happens in every case, it certainly covered this individual insured. The release is not contested. What the release means is contested. At the point that the insured gave the release, he could not release the doctor's claim because it wasn't his to release. If he has signed his right to payment to the doctor, it's not his claim anymore to release. So whatever settlement they might have reached with the insured, it did not cover the doctor. So it does not release the doctor's claim against travelers. Mr. Taylor, your adversaries say that amendments to your complaints would be futile. How do you answer that? Insofar as the plaintiffs which the district court sui sponte dismissed without notice to us, the court noted in a footnote that in footnotes in the different opinions that Plaintiff X did not make allegations of wrongdoing against the defendants. We explained why we believe that it's in there, because the plaintiffs alleged that they did thus and such, and the defendants did thus and such to the plaintiffs. But in terms of correcting that type of issue, that's a question of just putting in particular names, and Plaintiff X alleges that the defendants did this wrong to him. That is dotting an I, which we think is dotted already, but if somebody thinks that the I needs to be dotted, we can go back and dot it. In respect to AIG and farmers, we rely on our discussion in terms of the Tran and the Delos cases from California, and explaining why it is that the farmer's entity that does everything is liable. But in terms of an agency theory, we believe that we can allege a complaint, because they haven't given a complete picture of the corporate structure. AIG Marketing and AIG Claims Service do all of the business functions of all of the insurers that have their name on the policies. The insurers that have their name on the policies have no employees, they have assets, they have no employees. All of the business functions are performed by these two entities. The principal is the person that makes all of the decisions. The principal, in respect to agency versus principal, is AIG Marketing and AIG Claims Services. They're saying that you're talking to the wrong person, you should be dealing with Charlie McCarthy. The real person that you need to be talking to is Edgar Bergen, who is doing everything, and that is AIG Marketing and AIG Claims Services. And farmers, insurance exchange in the case of farmers. Anything else, Mr. Taylor? Not unless your honors have some questions. All right, well, we thank you. In fact, we thank all counsel for an exceptional argument in an orderly fashion in a fairly complex case. Thank you, your honor. And the case has been well argued. We'll take the matter under advisement.